IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



10/18/2017

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ELMIGERI O. VIGIL** | § | |
| xxx-xx-9740 | § | Case No. 16-41463 |
| **and MIRIAM E. VIGIL** | § | |
| xxx-xx-0391 | § | |
| 1448 N Cedar Hill Rd, Cedar Hill, TX 75104 | § | |
| | § | |
| | § | |
| Debtors | § | Chapter 7 |
| | | |
| BRIAN WELLMON, individually, as | § | |
| assignee of Patricia Wellmon, and derivatively | § | |
| on behalf of Furniture Your Way Int'l, LLC | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Adversary No. 16-4107 |
| | § | |
| ELMIGERI O. VIGIL, | § | |
| and MIRIAM E. VIGIL | § | |
| | § | |
| Defendants | § | |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**[1]

On this date the Court considered the Motion for Default Judgment filed by the

Plaintiff, Brian Wellman, individually, as assignee of Patricia Wellmon, and derivatively

on behalf of Furniture Your Way International, LLC, (the "Plaintiff"), through which he

seeks to deny the entry of a Chapter 7 discharge in favor of Debtors, Elmigeri O. Vigil

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

and Miriam E. Vigil pursuant to various subsections of 11 U.S.C. § 727(a) or,

alternatively, for the determination of the dischargeability of certain debts allegedly owed

by Mr. and Mrs. Vigil to Wellmon or Furniture Your Way International, LLC.  After the

entry of default against both of the Debtor-Defendants for failure to tender a proper

answer following proper service, the Court conducted an evidentiary hearing to consider

evidence presented by the Plaintiff.  At the conclusion of the hearing, the Court directed

the submission of additional evidence by the Plaintiff and, upon receipt of such

submissions, the Court took the matter under advisement.  The following findings of fact

and conclusions of law dispose of all issues before the Court.

## *ADMISSIONS AND/OR FINDINGS OF FACT*

1.      The Debtor-Defendants, Elmigeri O. Vigil and Miriam E. Vigil (collectively, the "Debtor -Defendants"), each served as an owner, officer and/or director of Furniture Your Way, Inc. ("FYW").[2]

2.      FYW was a furniture manufacturing company.

3.      The Debtor-Defendants collectively own 100% of the shares of FYW and have controlled the corporate actions of FYW as its president and vice-president.[3]

4.      The Debtor-Defendants individually owned the real estate and improvements located at 415 Regal Row in Dallas, Texas (the "Regal Row Premises"), upon which FYW's manufacturing operations were based (the "Dallas Plant").[4]

---

[2]  Admitted fact from Plaintiff's Original Complaint [dkt # 1] (the "Complaint") at ¶ 11.

[3]  *Id.*; Trial Memorandum Ex. C-1: Transcript of FYW § 341(a) meeting on Sept. 16, 2016 at 2:18-25.

[4]  Complaint at ¶ 26.  Ex. 17.

5.  FYW also conducted furniture manufacturing operations in Hermasillo, Mexico[5] — with upholstered furniture produced under the Ebanista brand name and un-upholstered furniture produced under the Mavati's brand name.[6]

6.  Plaintiff Brian Wellmon began investigating the possibility of lending money or otherwise making other investments in FYW in 2014.

7.  During the negotiations regarding such investment, the Debtor-Defendants each represented to Wellmon that FYW owned the furniture manufacturing operation in Hermosillo, Mexico which produced upholstered furniture under the name "Ebanista" and unupholstered furniture under the name "Mavati's."[7]

8.  The 2012 and 2013 FYW financial statements and subsequent documents tendered to Wellmon to induce his investment shows that Mavati's was owned by FYW.[8]

9.  Wellmon first advanced funds to FYW on or about July 29, 2014 through means of a promissory note executed by FYW.[9]

10. The Debtor-Defendants personally guaranteed the payment of the indebtedness to the Wellmons arising from the promissory note given by FYW.[10]

11. Wellmon was introduced to the employees working in the Hermosillo plant as a major investor in the company that owned the manufacturing operation in Hermosillo, which was then operating under the name Ebanista.[11]

12. On September 23, 2014, two months after the promissory note was executed by FYW, Wellmon and the Debtor-Defendants, as the sole owners of FYW, formed

---

[5] *Id*. at ¶¶ 22 and 24.

[6] *Id*. at ¶¶ 22 and 24.

[7] Supplemental Affidavit of Brian Wellmon ("Wellmon Affidavit") at ¶ 2.

[8] Ex. B-1.1 and B-1.2 to Trial Memorandum

[9] Complaint at ¶ 23.  Plaintiff's Ex. 1.  Though the loan proceeds were tendered by both Brian Wellmon and his spouse, Patricia Ann Wellmon, Patricia Wellmon has assigned all of her interests involved in this case to her husband, Brian Wellmon.  *See* Plaintiff's Ex. 10.

[10] Plaintiff's Ex. 2-3; Complaint at ¶ 48.

[11] *Id*. at ¶¶ 23 and 90.

Furniture Your Way International, LLC ("International").[12]

13.  The assets and operations of FYW were subsequently transferred to International via a Bill of Sale and Assignment which stated that it transferred "all right, title and interest to any and all of its business, property, rights and assets, both tangible and intangible, of every kind and description, wherever located, used by, pertaining or relating to its business, including furniture, equipment, inventory and materials, but excluding any real property."[13]

14.  International assumed the obligation to pay the promissory note to Wellmon, with the Debtor-Defendants agreeing to such assumption in their role as individual guarantors.[14]

15.  International has only two members:  Wellmon and FYW.[15]

16.  International is governed by two managers:  Wellmon and Omar Vigil.[16]

17.  From the time of the execution of the promissory note at the end of July 2014 through March 2015, the Debtor-Defendants and Wellmon, first through FYW and then through International, exercised control over the manufacturing operations at the Hermosillo Plant and paid its payroll and other financial obligations.[17]

18.  Omar Vigil took actions with regard to the Hermosillo plant operations in this time period pursuant to instructions from Wellmon.[18]

19.  FYW and then International also controlled manufacturing operations at the Dallas Plant.

---

[12]  *Id*.; Plaintiff's Ex. 5.

[13]  Plaintiff's Ex. 8.

[14]  Plaintiff's Ex. 9.

[15]  Complaint at ¶¶ 3 and 73;  Plaintiff's Ex. 6-7.

[16]  *Id*.

[17]  Complaint at ¶¶ 23 and 89; Plaintiff's Ex. 18-22.

[18]  Complaint at ¶ 23.

20.   The FYW assets that were located at the Dallas Plant were transferred to International upon its creation and International continued to operate the Dallas Plant on the Regal Row Premises.[19]

21.   In early 2015, however, International decided that it should close the Dallas Plant and consolidate all manufacturing operations at the Hermosillo Plant in Mexico where labor costs were lower.[20]

22.   Upon the decision to move the situs of its operations to Mexico, International gave notice in February 2015 of its intent to terminate the lease of the Regal Row Premises and abandon its occupancy and use of those premises at the end of March, 2015.[21]

23.   International was current on lease payments to the Debtor-Defendants regarding the Regal Row Premises at the time of the issuance of the Notice to Vacate.

24.   During the month of March 2015, prior to vacating the Regal Row Premises, International shipped substantial amounts of equipment, material, and/or completed product from the Dallas Plant to the Hermosillo Plant.[22]

25.   On or about March 20, 2015, the Debtor-Defendants repudiated any claim of ownership or control of the Hermosillo Plant asserted by International d/b/a Ebanista.[23]

26.   The Debtor-Defendants denied that they or FYW had ever possessed any ownership interest in the Hermosillo operation, and that the Hermosillo operation was instead owned and operated by a separate entity, Ebanista Home, S.A. de C.V., a company formed less than a month after Wellmon advanced the first $750,000 to FYW.

---

[19]  *Id.* at ¶¶ 24 and 95.

[20]  *Id.* at ¶ 26.

[21]  *Id*. at ¶¶ 24 and 95.

[22]  *Id*. at ¶ 27.

[23]  *Id*. at ¶ 30.

27.   No evidence supports the Debtor-Defendants' denials that they, or FYW, had ever possessed any ownership in the Hermosillo Plant.

28.   The Hermosillo Plant, including all property utilized in its operations, nevertheless belonged to FYW, and were thus included in the "acquired property" that FYW had assigned to International in October 2014.[24]

29.   In the alternative, the Hermosillo Plant and all property utilized in its operations, belonged to International because 98.9% of the initial capital of Ebanista was contributed by Omar Vigil on behalf of International.[25]

30.   The Debtor-Defendants never supplied any satisfactory explanation regarding the ownership of the Hermosillo plant and how International was somehow deprived and/or divested of the ownership of that Mexican plant and of the ownership of the International assets shipped there.

31.   On or about March 30, 2015, two days before the lease ended, the Debtor-Defendants, as landlords, locked out International from the Regal Row Premises.[26]

32.   This lockout trapped valuable International assets on the Regal Row Premises, including four containers of product in various stages of completion and hundreds of thousands of dollars of leather. [27]

33.   International was not in default on its lease obligations when the Debtor-Defendants seized its assets at the Regal Row Premises.[28]

34.   International was never able to retrieve its assets from the Regal Row Premises.[29]

---

[24]   Plaintiff's Ex. 8.

[25]   Complaint at ¶ 87.

[26]   Trial Memorandum Ex. B-2.

[27]   Complaint at ¶¶ 27, 28, and 31; Trial Memorandum Ex. B-2.

[28]   Complaint at ¶¶ 24 and 28.

[29]   *Id*.

35.   On August 16, 2016, the Debtor-Defendants filed a joint petition for relief under Chapter 7 of the Bankruptcy Code in this Court under case no. 16-41463.

36.   On that same date, FYW filed a petition for relief under Chapter 7 of the Bankruptcy Code in this Court under case no. 16-41465.

37.   Christopher Moser (the "Trustee") was appointed as the Chapter 7 trustee in both the individual debtors' case and in the FYW case.[30]

38.   On September 16, 2016, the Trustee convened the original meeting of creditors in the FYW case pursuant to § 341 of the Bankruptcy Code.[31]

39.   In the FYW case, the Trustee requested the Debtor-Defendants, as the controlling persons of FYW, to produce FYW tax returns, FYW banking records,[32] complete QuickBooks accounting records for FYW,[33] and documentation of the Plaintiff Wellmon's lien priority against the assets of FYW.[34]

40.   The Debtor-Defendants were legally responsible to act on behalf of FYW.[35]

41.   The Trustee reminded the Debtor-Defendants at the end of the initial § 341 meeting in their personal case about supplying the requested FYW information.[36]

42.   At the continued § 341 meeting for FYW, the Trustee noted that he had not yet received, and again requested, the Quick Books information and the bank

---

[30]   *Id*. at ¶ 16.

[31]   Complaint at ¶ 16.

[32]   *Id*; Trial Memorandum Ex. C-1: Transcript of FYW § 341(a) meeting on Sept. 16, 2016 at 8:10-19.

[33]   *Id*. at 8:23-9:20; Complaint at ¶ 16.

[34]   *Id*; Ex C-1 at 17:8-17.

[35]   *See supra* note 3.

[36]   Trial Memorandum Ex. C-2: Transcript of Vigils § 341(a) meeting on Sept. 16, 2016 at 11:18-21.

statements for FYW.[37]

43.    Two months later, at the continued § 341 meeting for FYW, the Trustee noted that he had still not received, and requested yet again, the 2014 FYW tax return.[38]

44.    The Debtor-Defendants ultimately provided one FYW tax return, but failed to tender a second return as requested by the Trustee.[39]

45.    The Debtor-Defendants failed to supply the requested FYW bank records to the Trustee despite the Trustee's repeated requests.[40]

46.    The Debtor-Defendants failed to supply the requested QuickBooks records of FYW to the Trustee despite the Trustee's repeated requests.[41]

47.    The Debtor-Defendants failed to tender sufficient financial records for the Trustee to decipher or understand the financial history of FYW.[42]

48.    The requested FYW documents were directly relevant to the FYW bankruptcy case and the performance of the Trustee's duties therein.

49.    The Trustee was an officer of the bankruptcy estate of FYW and was entitled to possession of the FYW financial documents.

50.    The financial documents which the Debtor-Defendants failed to provide to the Trustee on behalf of FYW related to the property or financial affairs of FYW.

51.    Due to their default, the Debtor-Defendants have failed to present any justification for their failure to tender the FYW documents to the Trustee.

---

[37] Trial Memorandum Ex. C-4: Transcript of FYW § 341(a) meeting on Nov. 14, 2016 at 2:7-4:8.

[38] *Id*. at 4:13-17.

[39] Complaint at ¶ 19(a); Trial Memorandum Ex. A - Affidavit of Christopher Moser, Chapter 7 Trustee (the "Trustee Affidavit") at ¶ 4.

[40] *Id*. at ¶ 5; Complaint at ¶ 19(b).

[41] Complaint at ¶ 19(c); Trustee Affidavit at ¶ 6.

[42] Trustee Affidavit at ¶ 6.

52.     The failure of the Debtor-Defendants to provide the FYW financial documents to the Trustee prevented the Trustee from understanding the financial condition of FYW.

53.     The testimony of each Debtor-Defendant under oath documents that each Debtor-Defendant assured the Trustee on multiple occasions that the requested FYW financial documents would be provided.

54.     The testimony of each Debtor-Defendant under oath fails to present any credible explanation for their failure to tender the FYW financial documents to the Trustee.

55.     The circumstances presented in the record establish that the failure of each Debtor-Defendant to tender the FYW financial documents to the Trustee was performed knowingly and with a fraudulent intent.

56.     The Plaintiff filed his complaint in this adversary proceeding on November 15, 2016.

57.     The complaint and a proper summons was served upon each of the Debtor-Defendants, Elmigeri O. Vigil and Miriam E. Vigil, on November 22, 2016.

58.     Upon the failure of each Debtor-Defendant to respond to the Complaint in the manner and within the time period designated by the Federal Rules of Bankruptcy Procedure, the Court entered default against each such Debtor-Defendant by separate orders on January 24, 2017.

59.     The Plaintiff filed his Motion for Default Judgment on March 14, 2017.

60.     On April 11, 2017, the Court conducted an evidentiary hearing on the Plaintiff's Motion for Default Judgment.

61.     At the conclusion of the evidentiary hearing, the Court provided the Plaintiff with an opportunity to supplement his evidentiary submissions.  Such submissions were tendered to the Court on May 15, 2017 at which time the Court took the matter under advisement.

## *CONCLUSIONS OF LAW*

1.     The Court has jurisdiction to consider the adversary complaint in this proceeding
pursuant to 28 U.S.C. §§ 1334 and § 157.

2.     This Court has authority to enter a final judgment in this adversary proceeding
since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C.
§ 157(b)(2)(A), (I), and (J) and meets all constitutional standards for the proper
exercise of full judicial power by this Court.

3.     The Plaintiff, as a member of International, has standing to bring claims
derivatively on behalf of International because of its status as a closely held
limited liability company pursuant to § 101.463 of the Texas Business
Organizations Code.[43]

4.     The Bankruptcy Code requires that a debtor be granted a discharge unless one of
the statutory grounds for denial of that discharge is proven.  11 U.S.C. § 727(a).

5.     The denial of a debtor's discharge is considered an extreme remedy.  *Pher
Partners v. Womble (In re Womble)*, 289 B.R. 836, 845 (Bankr. N.D. Tex. 2003)
(citing *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).

6.     "Courts should deny discharge only for very specific and serious infractions."
*Martin Marietta Matl's Southwest, Inc. v. Lee (In re Lee)*, 309 B.R. 468, 476
(Bankr. W.D. Tex. 2004) (citing *Ichinose v. Homer Nat'l Bank (In re Ichinose),*
946 F.2d 1169, 1172 (5th Cir. 1991)).

7.     A denial of discharge is to be imposed only upon those debtors who have not been
honest and forthcoming about their affairs and therefore have not fulfilled the
duties of full disclosure required of a bankruptcy debtor.  *Buckeye Retirement
Properties v. Tauber (In re Tauber)*, 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006)
["The denial of a debtor's discharge is akin to financial capital punishment. It is
reserved for the most egregious misconduct by a debtor."].

8.     Thus, speculation and surmise about the existence of such misconduct are
insufficient.  Probative evidence must be presented.

---

[43]  Complaint at ¶¶ 3 and 73.

9.  To fulfill the statutory policy of providing a debtor with a "fresh start," the provisions of § 727(a) are construed strictly against parties seeking to deny the granting of a debtor's discharge and liberally in favor of a debtor. *Laughlin v. Nouveau Body & Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010); *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 356 (Bankr. N.D. Tex. 2010).

10. If a complaint filed in an adversary proceeding is duly served, a defendant must serve an answer within 30 days after the summons is issued. FED. R. BANKR. P. 7012(a).

11. As a result of the Debtors' default, as entered by the Court, "[a]n allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied." FED. R. CIV. P. 8(b)(6), as incorporated into bankruptcy adversary proceedings by FED. R. BANKR. P. 7008.

12. In light of the Debtors' default, as entered by the Court, the Plaintiff seeks the entry of a default judgment pursuant to FED. R. CIV. P. 55, as incorporated into bankruptcy adversary proceedings by FED. R. BANKR. P. 7055.

13. It is important to note that, in federal practice in general, and particularly in the bankruptcy context, there is no such thing as a right to a default judgment. As one court has recognized, "default judgments are not mandatory. Under Rule 7055, the Court may require proof or necessary facts to support a valid cause of action. If such facts are lacking, the Court may not enter the judgment." *Discover Bank v. Fuentes (In re Fuentes)*, 474 B.R. 497, 501 (Bankr. S.D. Tex. 2012); *see also Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) ["A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default"].

14. "Thus, mere default by a defendant does not necessarily warrant a default judgment, as a default is not an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Whirlpool Corp. v. Global Purification, LLC*, 2017 WL 2099771, at *1 (E.D. Tex. 2017) (citing *Nishimatsu Const. Co ., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975)).

15. "Default judgment is only proper if the complaint contains well-pleaded factual allegations establishing a valid cause of action." *Champion v. SLM Corp.,* 2011 WL 13785261 (E. D. Tex. 2011).

16.    However, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assoc., Inc*., 788 F.3d 490, 496 (5th Cir. 2015).

17.    In addition, a court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." FED. R. CIV. P. 55(b)(2)(B) and (C), as incorporated into bankruptcy adversary proceedings by FED. R. BANKR. P. 7055.

18.    Decisions to enter judgment by default are committed to the court's sound discretion.

*Denial of Discharge Under § 727(a)(7): Wrongful Conduct in Related Case*

19.    Section 727(a)(7) of the Bankruptcy Code denies a discharge to an individual debtor to the extent that he or she, within a year of the filing of a bankruptcy petition, engages in conduct on behalf of an insider which violates any of the first six subsections of § 727(a).[44]

20.    In other words, it "extends the basis for denial of discharge to the debtor's misconduct in a substantially contemporaneous related bankruptcy case." *DT Credit Corp. v. Brock (In re Brock)*, 2008 WL 2954621, at *4 (Bankr. E.D. Tex. 2008).

21.    As one court recently described,

> The purpose and intent of Section 727(a)(7) of the Bankruptcy Code is to prevent debtors who are involved in several bankruptcy proceedings from failing to cooperate in a proceeding in which their own discharge is not at issue such

---

[44] 11 U.S.C. § 727(a)(7) states that:

(a) The court shall grant the debtor a discharge, unless —

. . .

> (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

as a corporate proceeding or a proceeding involving a partner or a relative and then, subsequently or simultaneously, obtaining an individual discharge in another case. Section 727(a)(7) is a statutory provision which ties related cases together so that misconduct in one case by an individual may be chargeable against that individual in other related proceedings.

*Rupp v. Pearson (In re Pearson)*, 2014 WL 3051211, at *2 (Bankr. D. Utah 2014).

22.     To deny a debtor's discharge under § 727(a)(7), a plaintiff must establish that:

(1) the elements of sections 727(a)(2), (3), (4), (5), or (6) are met;
(2) the actions occurred during the current case or within one year before the filing of the petition; and
(3) the actions are in connection with the bankruptcy case of an insider.

*Id.* (citing *Anda v. Song (In re Song)*, 449 B.R. 84, 97 (Bankr. N.D. Cal. 2011)).

23.     In the context of an individual debtor, the term "insider" is defined in § 101(31)(A)(iv) of the Bankruptcy Code to include a "corporation of which the individual debtor is a director, officer, or person in control."

24.     FYW constituted an "insider" as to each of the Debtor-Defendants.

25.     In addition to the actions and/or omissions of the Debtor-Defendants in their bankruptcy case, the Complaint seeks to deny a discharge to them based upon alleged violations of various subsections of § 727(a) occurring in the FYW bankruptcy case.

26.     The Court will evaluate the evidence in light of the elements required under each of the pled subsections of § 727(a) and whether each Debtor-Defendant's actions/omissions in the FYW case fulfilled those requirements.

*Section 727(a)(2)(A): Transfer or Concealment of Property.*

27.     In order to establish grounds for denial of a discharge under § 727(a)(2)(A),[45] a

---

[45] 11 U.S.C. § 727(a)(2)(A) states that:

plaintiff must demonstrate by a preponderance of the evidence that there was:

(1) a transfer or concealment of property;
(2) belonging to the debtor;
(3) within one year of the filing of the petition; and
(4) performed with an intent to hinder, delay or defraud a creditor or an officer of
     the estate.

*Judgment Factors, LLC v. Packer ( In re Packer)*, 816 F.3d 87, 92–93 (5th Cir. 2016); *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989).

28.    The second requirement for denying a discharge under § 727(a)(2) is that the property which is transferred, concealed or removed be property of the debtor or property of the estate.

29.    "Under the second element of § 727(a), a relevant concealment can occur only if property of the debtor is concealed." *Cadle Co. v. Friedheim ( In re Friedheim)*, 277 Fed. App'x. 485, 489 (5th Cir. 2008).

30.    As one court has described this requirement,

> According to the plain language of the statute, there must be a
> disposition of "property of the debtor." Relying on this
> language, courts have recognized that section 727(a)(2)(A) is
> concerned with the disposition of property in which the debtor
> has a "direct proprietary interest." Therefore, section
> 727(a)(2)(A) does not apply when the disposition involves
> property belonging to someone, or some entity, other than the
> debtor, even if the transfer may cause an incidental effect
> upon the debtor's assets. . . . When a corporation is a bona fide
> entity distinct from an individual debtor-shareholder, courts

---

The court shall grant the debtor a discharge unless —

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer
> of the estate . . . has transferred, removed, destroyed, mutilated, or
> concealed, or has permitted to be transferred, removed, destroyed,
> mutilated, or concealed —
>
> > property of the debtor, within one year before the date of
> > the filing of the petition. . . .

**-14-**

> have applied the above-stated principle to hold that transfers
> of property belonging to the corporation are outside the scope
> of section 727(a)(2)(A).

*Wachovia Bank, N.A. v. Spitko (In re Spitko),* 357 B.R. 272, 299 (Bankr. E.D. Pa. 2006) (citations omitted).

31. "In order to justify the refusal of discharge under a section 727(a)(2) transfer, it must be shown that there was an actual transfer of valuable property *belonging to the debtor* which reduced the assets available to creditors and which was made with fraudulent intent." *Manning v. Watkins (In re Watkins)*, 474 B.R. 625, 633 (Bankr. N.D. Ind. 2012) (emphasis added).

32. The admitted facts arising from the respective defaults by each Debtor-Defendant demonstrate that each transfer, removal or concealment of property listed in the Complaint as grounds for denial of a discharge under § 727(a)(2)(A) was property that had been transferred from FYW to International and was rightfully owned by International.[46]

33. Each transfer, removal or concealment of property listed in the Complaint as grounds for denial of a discharge under § 727(a)(2)(A) was property that was not owned by the Debtor-Defendants in their individual capacity nor owned by FYW.

34. Each transfer, removal or concealment of property listed in the Complaint as grounds for denial of a discharge under § 727(a)(2)(A) was not transferred within one year of the filing of the bankruptcy petition by either the Debtors or FYW.

35. Thus, because the property was not property of the bankruptcy estate of the Debtors, and was not transferred, removed or concealed within a year of the bankruptcy filing by the Debtors, the admitted facts fail to support the claim for relief sought by the Plaintiff under § 727(a)(2)(A) and such claim is denied.

36. Thus, because the property was not property of the bankruptcy estate of FYW, and was not transferred, removed or concealed within a year of the bankruptcy filing by FYW, the admitted facts fail to support the claim for relief sought by the Plaintiff under § 727(a)(7) and such claim is denied.

---

[46] Plaintiff's Ex. 8.

*Section 727(a)(4)(A): False Oaths.*

37.    In order to establish grounds for denial of a discharge under § 727(a)(4)(A),[47] a plaintiff must demonstrate that:

> (1) the debtor made a statement under oath;
> (2) the statement was false;
> (3) the debtor knew the statement was false;
> (4) the debtor made the statement with fraudulent intent; and
> (5) the statement materially related to the bankruptcy case.

*Packer,* 816 F.3d at 94;  *Cadle Co. v. Duncan (In re Duncan),* 541 F.3d 688, 695 (5th Cir. 2009).

38.    "The purpose of § 727(a)(4)(A) is to enforce a debtor's duty of disclosure and to ensure that the Debtor provides reliable information to those who have an interest in the administration of the estate.  Thus, complete financial disclosure is a condition precedent to the privilege of discharge." *Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 469 (Bankr. N.D. Ill. 2007) (citations and quotations omitted).

39.    "False oaths sufficient to justify the denial of discharge include: (1) a false statement or omission in the debtor's schedules; or (2) a false statement by the debtor at the examination during the course of the proceedings." *Beaubouef ,* 966 F.2d at 178.

40.    However, not every misstatement or omission in the schedules constitutes a false oath.  As one court has noted,

> Section 727(a)(4) does not, however, operate to penalize debtors for honest mistakes or misstatements.  To be sure,

---

[47]11 U.S.C. § 727(a)(2)(A) states that:

The court shall grant the debtor a discharge unless —

> the debtor knowingly and fraudulently, in or in connection with the case—

> (A) made a false oath or account . . . .

> courts acknowledge that petitions, schedules, and statements
> are often filed hastily, memories fail, and innocent mistakes
> and omissions can occur, and will be understanding of that
> reality so long as the evidence does not reveal an underlying
> intent to deceive.

*Webb v. Isaacson (In re Isaacson)*, 478 B.R. 763, 783–84 (Bankr. E.D. Va. 2012) (citations and internal quotations omitted).

41.    Indeed, even multiple errors do not mandate the finding of a false oath without sufficient evidence of a fraudulent intent. *First United Bank & Trust Co. v. Buescher (In re Buescher)*, 491 B.R. 419, 432 (Bankr. E.D. Tex. 2013), *aff'd*, 783 F.3d 302 (5th Cir. 2015).

42.    A false statement or omission is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 692 (Bankr. E.D. Tex. 2009) (citing *Duncan*, 562 F.3d at 695).

43.    The admitted fact regarding FYW transfers within two years fails to constitute a false oath because the schedules only require disclosure of transfers within one year and there is no evidence of such a transfer.

44.    Each purportedly false statement listed in the Complaint as grounds for denial of a discharge under § 727(a)(4)(A) occurring in the Debtor-Defendants' bankruptcy case either has not been proven as false or, even if false, was not material to the Debtor-Defendants' individual bankruptcy case.

45.    Each purportedly false statement listed in the Complaint as grounds for denial of a discharge under § 727(a)(4)(A) which addressed FYW physical assets actually pertained to assets that were rightfully owned by International pursuant to assignment.[48]  Such statements, even if false, were not material to the FYW bankruptcy estate.

46.    Each purportedly false statement listed in the Complaint as grounds for denial of a discharge under § 727(a)(4)(A), other than those dealing with physical assets, were not material to the FYW bankruptcy estate.

---

[48]  Plaintiff's Ex. 8.

47.  Each transfer, removal or concealment of property listed in the Complaint as grounds for denial of a discharge under § 727(a)(2)(A) was not transferred within one year of the filing of the bankruptcy petition by either the Debtors or FYW.

48.  Because any purportedly false statement of either Debtor was not material to their individual bankruptcy case, the admitted facts fail to support the claim for relief sought by the Plaintiff under § 727(a)(4)(A) and such claim is denied.

49.  Because any purportedly false statement of either Debtor was not material to the FYW bankruptcy case, the admitted facts fail to support the claim for relief sought by the Plaintiff under § 727(a)(7) and such claim is denied.

*Section 727(a)(5): Failure to Explain Loss of Assets*

50.  In order to establish grounds for denial of a discharge under § 727(a)(5),[49] a party has the initial burden to establish a *prima facie* case that there has been a loss of substantial assets in the case, *Neary v. Guillet (In re Guillet)*, 398 B.R. 869, 890 (Bankr. E.D. Tex. 2008) (citing *Reed*, 700 F.2d at 992).

51.  A *prima facie* case is not established merely by an allegation that the debtor has failed to explain losses.  *Hinsley v Boudloche (In re Hinsley)*, 149 F.3d 1179, at *18 (5th Cir. 1998).

52.  Without the initial introduction of the disappearance of substantial assets or of unusual transactions, no § 727(a)(5) claim is established.  *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 371 (Bankr. N.D. Tex. 2010).

53.  The admitted facts arising from the respective defaults by each Debtor-Defendant demonstrate that each purported loss of an asset listed in the Complaint as grounds for denial of a discharge under § 727(a)(5) was property that had been transferred from FYW to International and was rightfully owned by International.[50]

---

[49]11 U.S.C. § 727(a)(2)(A) states that:

The court shall grant the debtor a discharge unless —

> the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

[50]  Plaintiff's Ex. 8.

54.     Each transfer, removal or concealment of property listed in the Complaint as
        grounds for denial of a discharge under § 727(a)(5) was property that was not
        owned by the Debtor-Defendants in their individual capacity, nor owned by FYW,
        and could not have been utilized to meet the liabilities of the Debtor-Defendants or
        the liabilities of FYW.

55.     Because the referenced property was not property of the bankruptcy estate of the
        Debtors, the admitted facts fail to establish a *prima facie* case to support the claim
        for relief sought by the Plaintiff under § 727(a)(5) and such claim is denied.

56.     Because the referenced property was not property of the bankruptcy estate of
        FYW, and the purported property actions did not occur within one year before the
        filing of the FYW bankruptcy petition, the admitted facts fail to establish a *prima
        facie* case to support the claim for relief sought by the Plaintiff under § 727(a)(7)
        and such claim is denied.

*Section 727(a)(4)(D): Withholding of Recorded Information.*

57.     A discharge may be denied under 11 U.S.C. § 727(a)(4)(D) if a debtor:

                . . . knowingly and fraudulently, in or in connection with the
                case, withheld from an officer of the estate entitled to
                possession under this title, any recorded information,
                including books, documents, records, and papers, relating to
                the debtor's property or financial affairs.

58.     The purpose of § 727(a)(4)(D) is to "ensure that debtors provide all relevant
        information without the need for lengthy examination and investigations into the
        affairs of the estate." *Tow v. Henley (In re Henley)*, 480 B.R. 708, 779 (Bankr.
        S.D. Tex. 2012) (citing *Crumley,* 428 B.R. at 367–68; and *Oldendorf v. Buckman*,
        173 B.R. 99, 104 (E.D.La.1994)).

59.     "Courts have interpreted this provision as imposing an affirmative duty on the
        [d]ebtor to cooperate with the trustee by providing all requested documents to the
        trustee for his review and failure to do so constitutes grounds for denial of
        discharge." *Neier v. Friedberg (In re Friedberg)*, 516 B.R. 205, 212 (Bankr. D.
        Conn 2014).

60.     "[T]he party objecting to discharge under 11 U.S.C. § 727(a)(4)(D) has the initial

**-19-**

burden of proving that:  (1) the withholding of documents was done by the debtor or someone for whose conduct the debtor is legally responsible; (2) was in connection with a case; (3) was withheld from an officer of the estate entitled to possession; (4) was done knowingly and fraudulently; and (5) relates to the debtor's property or financial affairs."  *Olson v. Slocombe (In re Slocombe)*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006).

61.   Thus, a failure by debtors without sufficient justification to provide a trustee with requested information to allow him to fully understand the debtors' financial condition establishes grounds for denial of discharge under § 727(a)(4)(D). *Walton v. Wheaton (In re Wheaton)*, 474 B.R. 287, 292 (Bankr. M.D. Fla. 2012).

62.   "This subsection requires a finding of intent, which can be established with circumstantial evidence such as when a debtor's conduct is evasive or persistently uncooperative or a debtor fails to explain his noncompliance with an order directing him to produce documents."  *Neier v. Friedberg (In re Friedberg)*, 516 B.R. 205, 212 (Bankr. D. Conn. 2014).

63.   A fraudulent intent may be reasonably inferred "from the Debtor's unexplained failure to produce an important financial document that he voluntarily disclosed and initially offered to provide."  *Chorches v. Licata (In re Licata)*, 2017 WL 2588337, at *4 (Bankr. D. Conn. 2017).

64.   Because the admitted facts and the supplemental evidence tendered by the Plaintiff clearly evidence the failure of FWY, through its officers and shareholders, to tender financial documents to the Trustee without justification, despite repeated, specific requests by the Trustee for such information, the elements required for the denial of discharge pursuant to § 727(a)(4)(D) have been established.

65.   Because the admitted facts and the supplemental evidence tendered by the Plaintiff clearly evidence that the elements of sections 727(a)(4)(D) have been met through actions or omissions of each of the Debtor-Defendants which occurred during the current case and which occurred in connection with the bankruptcy case of an insider of the Debtor-Defendants, namely FYW, such conduct warrants the denial of the discharge of each Debtor-Defendant pursuant to § 727(a)(7).

66.   In light of the denial of the Debtors' discharge, which is clearly within the core jurisdiction of this Court, such that the rights of the Plaintiff may continue to be pursued in courts of general jurisdiction — which this Court clearly is not — and in light of the numerous ancillary requests contained in the Plaintiff's complaint, including the requests for judicial foreclosure, fee forfeitures, the imposition of

constructive trusts, and other state law remedies which are more properly applied by state courts, the Court will decline to exercise its discretion to enter a final judgment on an unliquidated claim and the imposition of the ancillary collection remedies sought by the Plaintiff without prejudice to the reinstitution of such requests in a state court of appropriate jurisdiction.

67.   Accordingly, the relief requested in the Plaintiff's complaint is granted in part and the discharge of debts for the benefit of the Debtor-Defendants, Elmigeri O. Vigil and Miriam E. Vigil, shall be denied under § 727(a)(7).

68.   Taxable court costs in the form of the $350.00 filing fee are awarded to the Plaintiff and taxed against the Debtor-Defendants, Elmigeri O. Vigil and Miriam E. Vigil, pursuant to 28 U.S.C. § 1920.

69.   All relief requested in the Plaintiff's Complaint under § 523(a) of the Bankruptcy Code in the above-referenced adversary proceeding shall be dismissed as moot.

70.   All other relief requested in the Plaintiff's Complaint in the above-referenced adversary proceeding shall be dismissed without prejudice.

71.   To the extent that any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

72.   An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 10/18/2017

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

-21-